UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BARTOLO MEDINA-TAIZAN,

                  Petitioner,

    v.

BRUCE SCOTT, et al.,

                Respondents.

Case No. C26-2465-SKV

ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS

Petitioner Bartolo Medina-Taizan is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking immediate release from custody or a second bond hearing.  Dkt. 1 at 26.  Petitioner, who is proceeding through counsel, asserts that he was denied due process at his prior bond hearing in violation of the Fifth Amendment to the United States Constitution.  *Id.* at 17–24.  Respondents filed a return to the petition, *see* Dkt. 6, together with supporting exhibits, *see* Dkt. 7.  Petitioner filed a reply.  *See* Dkt. 8.  For the following reasons, the Court GRANTS IN PART the petition and ORDERS Petitioner's immediate release.

    ///

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 1

I.    BACKGROUND

Petitioner is a native and citizen of Mexico. *See* Dkt. 1 at 2. He last entered the United States approximately twenty years ago without inspection after being granted "voluntary Return to Mexico[]" in 2006. *See* Dkt. 7-2 at 6. Inclusive of a prior period in the United States, he has worked at the same company for approximately thirty-nine years. *See* Dkt. 1 at 2, 9. He is married and had two United States citizen children, one of whom is a minor and the other died in 2020 at age twelve after being hit by a drunk driver. *See id.* at 2, 10. Petitioner and his family have lived at the same address for fourteen years, *see* Dkt. 1-2 at 28, and Petitioner has no criminal record, *see id.* at 25; Dkt. 7-2 at 6.

On November 25, 2025, ICE detained Petitioner in Oregon and initiated removal proceedings. *See* Dkt. 7-1 at 2; Dkt. 7-2 at 5. He has remained detained ever since. On December 12, 2025, Petitioner submitted an I-918 Petition for Nonimmigrant Status as an indirect victim of the manslaughter of his son, which remains pending. *See* Dkt. 1 at 10. On December 22, 2025, Petitioner filed an Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents. *See id.* at 11. On January 5, 2026, that application was denied, but Petitioner's request for post-conclusion voluntary departure was granted. *See id.*; Dkt. 7-4 at 3. Petitioner's appeal remains pending. *See* Dkt. 1 at 11.

On May 29, 2026, Petitioner had a bond hearing before an immigration judge ("IJ"). *See id.* The IJ denied him bond, concluding that Petitioner was mandatorily detained under 8 U.S.C. § 1225, depriving the IJ of jurisdiction to consider Petitioner's custody redetermination request. *See id.*; Dkt. 7-3 at 2. In the alternative, the IJ found that Petitioner posed a flight risk. *See* Dkt. 7-3 at 2. Petitioner did not appeal the order denying him bond. *See* Dkt. 6 at 4.

On July 13, 2026, Petitioner filed the instant habeas action. *See* Dkt. 1.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 2

## II.   DISCUSSION

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, Petitioner challenges the lawfulness of his continued detention on due process grounds. He asserts that his detention is unlawful and arbitrary because the IJ who conducted his bond hearing erroneously found he was subject to a mandatory, not discretionary, detention regime and failed to properly apply the applicable legal standard. *See* Dkt. 1 at 17, 21–22, 24. He also asserts substantive and procedural due process violation claims. *See id.* at 19–24.

Individuals like Petitioner who are "present without admission" and "apprehended in the interior of the United States are subject to the [discretionary] detention regime of § 1226, not [mandatory detention under] § 1225(b)(2)(A)." *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026). Section 1226(a) grants the Government the discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the noncitizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory. *See* 8 U.S.C. § 1226. When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond. *See* 8 C.F.R. § 236.1(c)(8). After the initial custody determination, the detainee may request a bond redetermination by an immigration judge. 8 C.F.R. § 236(d)(1).

At the bond redetermination hearing, the burden is on the detainee to show to the satisfaction of the immigration judge that he warrants release on bond. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 3

2006)).  In making a bond decision under § 1226(a), an immigration judge must consider whether the detainee is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk[.]"  *Id.*  An immigration judge may also consider any number of discretionary factors, including:  (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee prosecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States.  *See id.*; *In re Guerra*, 24 I. & N. Dec. at 40.  "A § 1226(a) detainee will be released on bond if he demonstrates by a preponderance of the evidence that he is not a flight risk or a danger to the community."  *Rodriguez Vazquez*, 2026 WL 2196424, at *5 (citing *Rodriguez Diaz*, 53 F.4th at 1197).

Once an immigration judge has made an initial bond redetermination, a detainee's request for a subsequent bond redetermination must be made in writing and must show the detainee's circumstances have changed materially since the prior bond redetermination.  8 C.F.R. § 1003.19(e).  If the immigration judge denies bond, the detainee may appeal to the Board of Immigration Appeals ("BIA").  *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008); 8 C.F.R. § 236.1(d)(3).  If the BIA affirms the immigration judge's decision, the detainee may seek habeas relief from the district court.  *See Singh v. Holder*, 638 F.3d 1196, 1200–03 (9th

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 4

Cir. 2011); *Leonardo v. Crawford*, 646 F.3d 1157, 1159–61 (9th Cir. 2011); *Sun v. Ashcroft*, 370 F.3d 932, 941 (9th Cir. 2004).

Petitioner did not appeal the IJ's decision to deny him bond to the BIA. Exhaustion in this context is a prudential, rather than a jurisdictional, requirement. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). A court may require prudential exhaustion where: (1) agency expertise is necessary to build a proper record; (2) waiving the requirement would encourage bypassing the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes, obviating the need for judicial intervention. *Id*. (citing *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). If a court determines that an immigration detainee has failed to exhaust administrative remedies as a prudential matter, it should either dismiss the matter without prejudice or stay the case to permit exhaustion. *Id*. However, even if these factors weigh in favor of requiring prudential exhaustion, the Court may waive the requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id*. (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Aden v. Nielsen*, C18-1441-RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (first citing *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018) (petitioner "must show that at least one of the *Laing* factors applies in order to excuse exhaustion"); and then citing *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) (declining to waive exhaustion requirement because petitioner has not "demonstrated grounds for excusing [them]")).

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 5

Petitioner asks the Court to waive the exhaustion requirement because any appeal to the BIA would have been futile. *See* Dkt. 1 at 5–7. Considering the specific facts of this case, that argument is well taken. The IJ found that Petitioner was mandatorily detained under Section 1225(b), and that he therefore did not have jurisdiction to hear Petitioner's bond request, pursuant to *Matter of Yajure Hurtado*, a precedential BIA decision. *See* Dkt. 7-3 at 2; *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). During Petitioner's appeal window, which lapsed on June 29, 2026, the Ninth Circuit had not yet affirmed *Rodriguez Vazquez v. Bostock*, which held individuals like Petitioner, who entered without inspection and were later detained in the interior of the United States, are subject to discretionary, not mandatory, detention and therefore eligible for release on bond. *See* Dkt. 7-3 at 3; *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025). Had the BIA promptly reviewed Petitioner's case—absent then-available Ninth Circuit authority to the contrary—it would have affirmed the IJ's jurisdictional ruling under *Matter of Yajure Hurtado* and likely would not have reached the alternate finding of flight risk. *See Segura Serrano v. Scott*, No. C26-1268-LK, 2026 WL 1674357, at *4 (W.D. Wash. May 26, 2026) ("[I]t is very likely that the BIA will have no occasion to review the merits of the IJ's bond determination. The principal basis upon which the IJ denied bond is the BIA's binding decision in *Matter of Yajure Hurtado*, which adopted the government's interpretation of Section 1225(b)(2)(A) to deny bond hearings to noncitizens like [Petitioner] . . . . It would be quite surprising if, despite its large backlog, the BIA decided to review the IJ's decision on the merits rather than simply adhering to *Yajure Hurtado* by affirming based on lack of jurisdiction.").

On July 30, 2026, the Ninth Circuit affirmed *Rodriguez Vazquez*, eliminating doubt in this Circuit regarding Petitioner's entitlement to a bond hearing and the IJ's power to grant him

bond. *See Rodriguez Vazquez*, 2026 WL 2196424, at *3. Given this sequence of events, the Court finds any appeal to the BIA would have been futile during the time Petitioner had to take one, and it exercises its discretion to waive the prudential exhaustion requirement. *See Laing*, 370 F.3d at 1000. The Court therefore turns to whether the IJ's decision to deny Petitioner bond was constitutionally deficient.

The IJ's determination that Petitioner presents a flight risk presents a mixed question of fact and law reviewable in habeas for an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 779–80 (9th Cir. 2024). While factual questions raised in an application for discretionary relief are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Id*. at 782 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)).[1] The Court "cannot reweigh evidence," but instead determines whether the immigration judge "applied the correct legal standard." *Id*. at 785 (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). "Given the significant liberty interest at stake for noncitizens in immigration detention and the weak or nonexistent governmental interest in continued detention without adequate process, courts in this and other districts have found due process violations where IJs abuse discretion in bond determinations." *Gimenez v. Hernandez*, C26-0966-GJL, 2026 WL 1156075, at *6 (W.D. Wash. Apr. 29, 2026) (collecting cases).

The Court finds the IJ committed two legal errors and thereby violated Petitioner's right to due process. The IJ erred at the outset by determining Petitioner was subject to the mandatory, not discretionary, detention regime and that, by extension, he did not have

---

[1] While the Court does not properly review "underlying factual determinations" such as "credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides[,]" it may review for an abuse of discretion pure legal questions or mixed questions of law and fact, "even when [the latter] . . . are primarily factual[.]" *Martinez*, 124 F.4th at 782–84 (quoting *Wilkinson*, 601 U.S. at 225).

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 7

jurisdiction to conduct a bond redetermination hearing. That error tainted the alternative finding of flight risk, which was made without a scintilla of support in the evidentiary record and despite a strong showing by Petitioner of his community ties. *See Suchite-Mendez v. Mullin*, No. C26-1691-DGE, 2026 WL 1801004, at \*6 (W.D. Wash. June 23, 2026). The record before the IJ indicated that Petitioner worked for the same employer in Oregon for approximately thirty-nine years, which would rehire him upon his release. *See* Dkt. 1-2 at 45, 47. It also showed Petitioner lived at the same address for fourteen years, *see* Dkt. 1-2 at 28; has a wife and school-age child, *see id.*; has a network of family members, friends, and colleagues that hold him in high esteem, *see id.* at 30–47; has extended family in Oregon, *see id.* at 36–37, 42; has a U.S. citizen family member willing to serve as his sponsor and ensure compliance with all release and court requirements, *see id.* at 42; and frequently visits his deceased son's grave, *see id.* at 34. The record also indicated Petitioner has no criminal history. *See id.* at 25; Dkt. 7-2 at 6.

Respondents submitted only one piece of evidence: a Form I-213 Record of Deportable/Inadmissible Alien that documents Petitioner's detention by immigration agents. *See* Dkt 7-2. That document is not evidence of any of the *Guerra* factors that inform flight risk determinations. At most, it evinces that Petitioner was detained, without incident or resistance, for unlawful presence in the United States. *See id.* at 5. It also corroborates Petitioner's evidence that he has no criminal history. *See id.* at 6.

On that record, there was nothing that indicated Petitioner posed a flight risk, and Petitioner put forth voluminous evidence that showed all applicable *Guerra* factors weighed decisively in his favor.[2] Petitioner demonstrated that he has lived in the United States for

---

[2] It is standard practice for IJs to render a brief oral ruling and check-box order for bond hearings. They issue a written decision memorializing their analysis if either party appeals. *See* Immigration Court Practice Manual ch. 8.3(e)(7) ("Usually, the Immigration Judge's decision is rendered orally. If either party appeals, the Immigration

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 8

decades, maintained a steady job, residence, and family in Oregon during that time, and has no criminal history. There was no evidence that Petitioner ever fled from prosecution or evaded legal obligations. No evidence was submitted that bore on prior immigration law violations. Respondent's evidence merely demonstrated what Petitioner's very presence at an immigration bond hearing made obvious—that he is physically present in the United States, allegedly without having been lawfully admitted. "[I]f every noncitizen could be denied bond" for alleged violations of immigration law, "there would be no reason to have a bond hearing in the first place." *Suchite-Mendez*, 2026 WL 1801004, at *6. Respondents do not point to anything else the IJ may have considered to find Petitioner a flight risk. *See* Dkt. 6 at 9, 11.

To the extent the IJ may have considered the strengths of Petitioner's potential avenues for obtaining immigration relief on appeal or lawful status through his still-pending U-visa application—the only *Guerra* considerations not directly addressed by either party's evidence—there is absolutely no support in the record for a conclusion that Petitioner "would try to flee rather than appear in immigration court to pursue claims for relief from removal proceedings, even if such claims were considered weak." *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1081 (W.D. Wash. 2026). Petitioner's appeal of the IJ's decision on his application for cancellation of removal is still on appeal, and Petitioner sought, and was granted, leave to voluntarily depart the United States after his immigration proceedings conclude without payment of a bond. *See* Dkt. 7-4 at 3. The mere "'fact of a removal order'—or the lack of potential forms of relief for a

---

Judge prepares a written decision based on notes from the hearing, however the record will not be transcribed."). While in many cases the failure to appeal deprives this Court of the record necessary to determine whether a constitutional violation occurred, the evidence in Petitioner's favor is so strong here, with no countervailing evidence submitted by Respondents, that the Court is well positioned to find the IJ's flight risk finding devoid of *any* evidentiary basis. How the IJ weighed the evidence is therefore not material here; Petitioner provided ample evidence of strong community connections, and there was simply nothing in the record to weigh it against to find him a flight risk.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 9

potential future removal order—'is not sufficient by itself to deny bond' or establish flight risk." *Segura Serrano*, 2026 WL 1674357, at *8 (quoting *Tavurov v. Noem*, No. C26-0668-TLF, 2026 WL 1283513, at *7 (W.D. Wash. May 11, 2026)); *see also Montiel Moreno v. Hernandez*, No. C26-1714-MLP, 2026 WL 1906522, at *9 (W.D. Wash. June 18, 2026). "[T]o the extent Petitioner's grant of voluntary departure . . . is relevant, it weighs against a flight risk finding because it required the IJ to find, under 8 U.S.C. § 1229c(b)(1), that Petitioner is 'a person of good moral character for at least 5 years immediately preceding the application for voluntary departure[,]'" *Montiel Moreno*, 2026 WL 1906522, at *9 (citing 8 U.S.C. § 1229c(b)(1)(B), and that Petitioner "established by clear and convincing evidence that the alien has the means to depart the United States and intends to do so[,]" 8 U.S.C. § 1229c(b)(1)(D). Accordingly, the IJ had no legal or factual basis to find Petitioner likely to abscond instead of seeing his immigration proceedings through and then departing voluntarily.

The Court concludes the IJ erred by misclassifying Petitioner as mandatorily detained and abused his discretion by alternatively finding Petitioner to be a flight risk and denying bond. With respect to the alternative ruling, "no reasonable fact finder could review the record before the immigration judge and conclude that Petitioner is a flight risk." *Haidari v. Scott*, No. C26-1655-KKE, 2026 WL 1628663, at *3 (W.D. Wash. June 5, 2026). This was not a question of judgment or weighing the evidence but evidentiary insufficiency as a matter of law. Accordingly, Petitioner's request for immediate release is granted.

Petitioner also requests permanent injunctive relief barring Respondents from redetaining him without prior notice and a hearing. *See* Dkt. 1 at 27. He provides no supporting argument and does not address the requirements of *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 10

(2008).  Because he has not demonstrated that he is entitled to an injunction, that request is DENIED.

III.     CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART the habeas petition at Docket No. 1 and ORDERS that Petitioner be released from custody within **twenty-four (24) hours** of this Order, subject to reasonable conditions of release.  Within **forty-eight (48) hours** of the issuance of this Order, the Government is ORDERED to file a declaration confirming that Petitioner has been released.  The Court DENIES without prejudice Petitioner's unbriefed request for a permanent injunction prohibiting his re-detention absent specific process.  Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 13th day of August, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 11